The **PRUDENTIAL INSURANCE COMPANY OF AMERICA**, Plaintiff,

v.

**James A. PARKER,
Defendant–Appellant,**

**and**

**Marjorie L. Parker,
Defendant–Appellee.**

No. 87–1790.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 28, 1988.

Decided Feb. 10, 1988.

Sharon A. Knapp, Carr, Korein, Schlichter, Kunin & Montroy, East St. Louis, Ill., for plaintiff.

Stanley W. Narusis, Narusis Law Office, Johnston City, Ill., for defendant-appellant.

Before CUMMINGS, POSNER, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

The issue in this interpleader action is whether James A. Parker is entitled to all or only one half of the proceeds of a $35,000 serviceman's group insurance policy on his son Bryan, who was killed in an accident while on active duty with the Navy. The issue turns on whether James Parker was "the beneficiary" that his son "designated by a writing received prior to death ... in the uniformed services." 38 U.S.C. § 770(a). If not (and the district court

thought not), the statute provides for the proceeds to go to the serviceman's parents. Implicitly this means half to each one, which often is of little significance but here is of great significance because Bryan's parents are divorced.

Bryan had signed and mailed to his father both a card designating James Parker as his beneficiary and a similar form with the same designation; both were witnessed by "Denise Ferguson 653" (or, more likely perhaps, "GS3"). These are official forms and presumably Miss Ferguson is a Navy personnel clerk, but either it has proved impossible to track her down or Mr. Parker's lawyer simply has failed to search for her; and a search of Navy records revealed no receipt of a beneficiary-designation form from Bryan Parker. There is little doubt that he wanted to designate his father as beneficiary; although it is always possible that he merely wanted his father to think he was his beneficiary, this conjecture implies a degree both of calculation and of knowledge of military-insurance law that seems implausible to impute to Bryan Parker. But it is not possible on this record to determine whether Bryan ever submitted the designation-of-beneficiary form to the Navy and therefore whether the Navy ever received it, as section 770 requires for the designation to be valid. See *Prudential Ins. Co. v. Smith*, 762 F.2d 476, 481–82 (5th Cir.1985).

 The background of the statute (which has never been construed by this court) is discussed fully in *Stribling v. United States*, 419 F.2d 1350, 1353–55 (8th Cir.1969). The language concerning the receipt of a written designation of beneficiary comes from an earlier statute designed to overrule a case in which a beneficiary named in the deceased's holographic will had been allowed to recover the insurance proceeds even though the insured had neither designated the beneficiary to, nor filed the will with, his employer. It is so difficult to reconstruct a person's donative intentions after his death that rules relating to bequests have often been strictly construed, and apparently section 770 is in this tradition. See *Metropolitan Life Ins.*

*Co. v. Manning*, 568 F.2d 922, 926 (2d Cir.1977); *Prudential Ins. Co. v. Warner*, 328 F.Supp. 1128, 1130 (W.D.Va.1971).

*Coomer v. United States*, 471 F.2d 1 (5th Cir.1973), cannot carry the day for James Parker. The witness to the designation of beneficiary, corresponding to Miss Ferguson in this case, was the person designated by the Navy to receive such designations, and he did receive it, but then it was lost in the Navy's files. The statute, however, just requires receipt. (To like effect as *Coomer* is *Shores v. Nelson*, 248 Ark. 155, 450 S.W.2d 543, 544 (1970).) If we knew who Miss Ferguson was, it might turn out that this case was just like *Coomer*. But we do not know who she is or whether she received a designation of beneficiary form or merely witnessed the documents that Bryan mailed to his father.

We are left with a residual doubt because of the treatment of the issue in cases involving private contracts of life insurance. Even though such contracts invariably require that a written designation of beneficiary be received by the insurance company to be effective, courts often relax this requirement considerably in the name of substantial compliance. See Annot., 78 A.L.R.3d 466, 494–506 (1977). A striking example is our own decision in *Connecticut General Life Ins. Co. v. Gulley*, 668 F.2d 325 (7th Cir.1982). The insured had died after executing, but before mailing, the change of beneficiary form (the newly designated beneficiary mailed it after the insured died). We held that this was substantial compliance with the contract, even though the contract stated (more emphatically than section 770): "No change of Beneficiary will take effect until received by the Insurance Company...." Yet the legislative history of section 770 suggests that Congress was (for reasons not revealed by that history) dissatisfied with the application of the substantial-compliance doctrine in cases involving government life insurance. Although that dissatisfaction is not clearly embodied in the text of the statute, the legislative thrust is apparent and we are therefore bound. We confess to having no idea why federal employees' life insurance should be treated differently

**8**

in this regard from other people's life insurance, and point out that the government has no financial stake in these cases: not only is the sole dispute over who shall collect the proceeds, but the insurance program is administered by private carriers.

AFFIRMED.